UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WESTEY KILBERT, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:16-CV-00462-AGF |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled, as defined by the Social Security Act, and was thus, not entitled to Child Supplemental Security Income ("SSI"). For the reasons set forth below, the decision of the Commissioner will be reversed and remanded.

# BACKGROUND

On December 12, 2012, Tina Thompson filed an application for SSI on behalf of her son, Westey Kilbert, Jr., ("Plaintiff") who was born on June 2, 1997, and thus a minor child at the time the application was filed. Plaintiff had been previously found not disabled on November 6, 2012.

Disability in the present SSI application was claimed based on learning disability,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

attention deficit disorder ("ADD"), a learning disorder, anxiety, and autism. After the application was denied at the initial administrative level, Plaintiff requested an evidentiary hearing before an administrative law judge ("ALJ"), which was held on October 2, 2014. Plaintiff (then 17 years old and in 12th grade) and his mother testified at the hearing. On November 25, 2014, the ALJ issued her decision finding that Plaintiff was not disabled under the Social Security Act. Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on January 16, 2015. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

Here, Plaintiff argues that the ALJ erred when she determined that Plaintiff had a less than marked limitation in his ability to interact and relate with others. Plaintiff asks that the decision of the Commissioner be reversed and the case remanded for further consideration.

## School and Medical Records, and Evidentiary Hearing

The Court adopts Plaintiff's unopposed recitation of the facts of this case, as set forth in his Statement of Material Facts (ECF No. 12-1), along with Defendant's unopposed Statement of Additional Material Facts (ECF No. 15-2). Together, these facts present a fair and accurate summary of the record, including the testimony at the evidentiary hearing. The Court will discuss specific facts as they are relevant to the parties' arguments.

## Statutory and Regulatory Framework for Child's SSI

For a child under the age of 18 to be considered disabled and eligible for Child's SSI

under the Social Security Act, he must have a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner's regulations set out a three-step sequential evaluation process to determine whether a child's impairment or combination of impairments is disabling. The Commissioner begins by deciding whether the child is engaged in substantial gainful activity. If so, benefits are denied. If not, at step two, the child's impairment is evaluated to determine whether it is severe. If the child's impairment is not severe, there is no disability. If the impairment is severe, at step three, the ALJ compares the impairment to the deemed-disabling childhood impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the child's impairment meets, medically equals, or functionally equals a listed impairment, the child is disabled. 20 C.F.R. § 416.924; *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 856 (8th Cir. 2003).

A child's impairment functionally equals a listed impairment if there is an "extreme" limitation in one of six functional domains,[2] or a "marked" limitation in at least two of the domains. 20 C.F.R. § 416.926a(b)(1); *Hudson ex. rel Jones v. Barnhart*, 345 F.3d 661, 665 (8th Cir. 2003). A marked limitation is one that "interferes seriously" with the child's ability to independently initiate, sustain, or complete domain-related activities.

---

[2] The six domains are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

20 C.F.R. § 416.926a(e)(2)(i). Not every activity in a domain must be markedly limited in order for the child's functioning in the domain as a whole to be considered so. *Id*. A marked limitation is also defined as "the equivalent of the functioning" expected to be found "on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."[3] *Id*.

In the only domain at issue in this case—ability to interact and relate with others—the ALJ is to consider how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). By the time the child reaches adolescence (age 12 to attainment of age 18), the child should be able to initiate and develop friendships with children who are his age and to relate appropriately to other children and adults, both individually and in groups. He should begin to be able to solve conflicts between himself and peers or family members or adults outside his family. The child should recognize that there are different social rules for him and his friends and for acquaintances or adults. The child should be able to intelligibly express his feelings, ask for assistance in getting his needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates,

---

[3] Scores that are three or more standard deviations below the mean indicate an "extreme" limitation. *Id*. § 416.926a(e)(3)(i).

teachers, employers, and strangers).   20 C.F.R. § 416.926a(i)(2)(v).

Examples of limited functioning in interacting and relating with others include that the child has no close friends, or friends that are all older or younger than the child; avoids or withdraws from people the child knows; has difficulty playing games or sports with rules; and has difficulty communicating with others, i.e., in using verbal and nonverbal skills to express himself, in carrying on a conversation, or in asking others for assistance. 20 C.F.R. § 416.926a(i)(3).

**ALJ's Decision**

The ALJ found that Plaintiff had the severe impairments of attention deficit disorder ("ADD"), learning disorder, adaptive deficits in functioning, anxiety, and an autism spectrum disorder.   The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the deemed-disabling impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

In terms of the six functional equivalence domains, the ALJ found Plaintiff to have the following restrictions: less then marked limitation in acquiring and using information; less than marked limitation in attending and completing tasks; less than marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; marked limitation in the ability to care for himself; and no limitation in health and physical well-being.   The ALJ then concluded that Plaintiff was not disabled because he was not extremely limited in one domain of functioning or markedly limited in two domains.

5

In reaching this conclusion, the ALJ afforded partial weight to the opinion of non-examining, state-agency psychological consultant Linda Skolnick, Psy.D, because Dr. Skolnick's opinions, rendered on March 28, 2013, did not take into account later-acquired evidence of Plaintiff's ability to interact well with his teachers and peers.[4] The ALJ gave little weight to the July 2011 opinions of non-examining, state-agency consultants Angela Harms, S.L.P., and David Hill, Ph.D., because they were rendered as part of a prior claim for SSI. Tr. 19. The ALJ also afforded little weight to the various Global Assessment of Functioning ("GAF")[5] scores assigned to Plaintiff ranging from 45 to 62 because a GAF score is a subjective determination which the Commissioner has stated "does not have any direct correlation to the severity requirement in our mental disorder listings." Tr. 19.

The ALJ considered Plaintiff's Individualized Education Program ("IEP"), which provided for 240 minutes per week in a resource room. The IEP described Plaintiff as a polite, likeable young man who gets along well with his teachers and peers. It was noted that Plaintiff was not taking his medications. Tr. 237.

---

[4] Notably, Dr. Skolnick in her report determined that Plaintiff had a marked limitation in his ability to interact and relate with others, but a less than marked limitation in the domain of caring for himself. In contrast, the ALJ found that Plaintiff had a marked limitation in his ability to care for himself, but a less than marked limitation in his ability to interact and relate with others.

[5] "The GAF is a numeric scale used to rate social, occupational, and psychological functioning "'on a hypothetical continuum of mental-health illness.'" *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (internal citations omitted). The scale ranges from zero to one hundred. *Id.* (noting that that the most recent edition of the DSM discontinued use of the GAF scale).

The ALJ next considered a Teacher Questionnaire that was completed on April 3, 2013, by Plaintiff's resource room teacher. In the section on "Interacting and Relating with Others," the Teacher Questionnaire listed 13 activities, with the option of rating each activity as presenting "no problem," "a slight problem," "an obvious problem," "a serious problem," or "a very serious problem." The resource room teacher indicated that Plaintiff had a "slight problem" using adequate vocabulary and grammar to express thoughts and ideas in every day conversation, but no problem in any of the other 12 activities, including playing cooperatively with other children, following rules (classroom, games, sports), and making and keeping friends. In a section for the teacher to comment, she indicated that Plaintiff had a "limited vocabulary," but otherwise, she had "no concerns." Tr. 230. Because the teacher did not actually render an opinion, the ALJ gave the Teacher Questionnaire "no weight as *opinion evidence*; however, [the teacher's] specific determinations [were] relied upon." Tr. 19-20 (emphasis in the original).

The ALJ did not assign a weight to the opinions of Ellen A. Horwitz, Ph.D., a specialist in pediatric psychology who performed psychological assessments on Plaintiff on November 29, 2010, December 20, 2010, August 14, 2012, and January 11, 2013, following parental concerns regarding his behavior and learning problems. However, the ALJ did cite Dr. Horwitz's determination that Plaintiff had "problems in the area of social-emotional, communicative functioning," but that it was difficult to determine if the problems were the result of an autistic disorder or schizoid personality-type disorder. Tr. 13. The ALJ also noted that Plaintiff was treated at Pathways Behavioral Health, where

there was no evidence that Plaintiff was uncooperative with his therapist or refused to speak or make eye contact.   Tr. 18.

Both Plaintiff and his mother testified at the hearing.   In her decision, the ALJ discussed Plaintiff's mother's testimony that Plaintiff had "a lot" of social and anxiety issues; that he had trouble speaking in front of others; that he spent most of his time isolated in his room; and that he had trouble making eye contact.   Tr. 17.   The ALJ found that Plaintiff's mother's testimony was not fully credible because it was inconsistent with substantial evidence in the record, including Plaintiff's testimony that although he spends most of his time in his room, he has three close friends with whom he plays basketball, football, and video games.   Tr. 22.

Overall, the ALJ found that the allegations regarding the intensity, persistence, and limiting effects of Plaintiff's impairments were not fully credible.   As relevant here, the ALJ relied on Plaintiff's testimony, the Teacher Questionnaire, Plaintiff's IEP, and medical records from Pathways Behavioral Health to conclude that Plaintiff had a less than marked limitation in his ability to interact and relate with others.

**Arguments of the Parties**

Plaintiff argues that the ALJ erred when she determined that Plaintiff had a less than marked limitation in his ability to interact and relate with others by (1) allocating only partial weight to the opinion of Dr. Skolnick; (2) ignoring the bulk of the evidence supporting a marked restriction in Plaintiff's ability to interact and relate with others, including the opinions of Dr. Horwitz and Plaintiff's ongoing and consistent mental health

8

treatment at Pathways Behavioral Health; and (3) finding the testimony of Plaintiff's mother not fully credible.

Defendant argues that the ALJ's determination that Plaintiff has a less than a marked limitation in the domain of ability to interact and relate with others is supported by substantial evidence. Defendant contends that the ALJ properly determined that Dr. Skolnick did not have the benefit of later evidence that contradicted her opinion and, as a result, the ALJ properly allocated partial weight to Dr. Skolnick's medical opinion. According to Defendant, the ALJ appropriately reviewed the opinions of Dr. Horwitz in making her decision, and the ALJ was correct in declining to consider medical opinion evidence that was formed as a basis of prior SSI claims, including the July 2011 opinions of non-examining State agency consultants Angela Harms, S.L.P., and David O. Hill, Ph.D. Defendant further contends that the ALJ properly evaluated Plaintiff's mother's testimony and determined that her testimony was not credible based on its inconsistencies with evidence of Plaintiff's ability to function at school, make acceptable grades, present with normal mental status exams, have friends, and get along with peers.

## DISCUSSION

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (citation omitted). The court "may not reverse . . . merely because substantial

evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**ALJ's Findings on Functional Equivalence**

As noted above, the ALJ found that Plaintiff was markedly limited in his ability to care for himself, but did not find that he was also markedly limited in his ability to interact and relate with others. In determining a child's functioning in a domain, parents and teachers, as well as medical providers, are important sources of information. *Id*. § 416.924a; *Richardson ex rel. Richardson v. Massanari*, No. C00-2083 MJM, 2001 WL 34152093, *10 (N.D. Iowa Sept. 27, 2001) (explaining that under the regulations, "the observations and opinions of a child's teachers are particularly informative at [the functional equivalence] step due to the teachers' regular, ongoing interaction with, and observation of, the child over a sustained period of time"); *cf.*, *Spencer v. Barnhart*, No. 4:05CV0408TCM, 2006 WL 568569, at *9 (E.D. Mo. Mar. 7, 2006) (holding that the ALJ erred in giving significant weight to the plaintiff's teacher, who had taught the plaintiff for

less than two months before completing the Teacher Questionnaire).

An ALJ is not required to credit assessments by teachers over assessments by treating doctors. *England v. Astrue*, 490 F.3d 1017, 1022 (8th Cir. 2007). The amount of weight given to a medical opinion is to be governed by a number of factors, including the examining relationship, the treatment relationship, consistency, specialization, and other factors. Generally, more weight is given to opinions of sources who have treated a claimant and to those who are treating sources. 20 C.F.R. § 404.1527(d).

Plaintiff was evaluated by Dr. Horwitz on November 29, 2010, December 20, 2010, August 14, 2012, and January 11, 2013.[6] The parties do not address whether Dr. Horwitz is a consulting or treating physician. A "treating source" means a claimant's "own acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1527. Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding, and the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citing 20 C.F.R. §

---

[6] Defendant urges the Court to disregard medical evidence dated before November 6, 2012, the date that Plaintiff's previous SSI application was denied, arguing that this evidence cannot be used to show disability for the instant SSI application. While evidence submitted and considered by an ALJ in a prior proceeding cannot be considered as new evidence in this proceeding, it can be considered as "background for new and additional evidence of deteriorating mental or physical conditions occurring after the prior proceeding." *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 365 (8th Cir. 2007) (quotation omitted).

11

404.1527(c)(2)).[7] Medical opinions by consulting physicians who examine a claimant once or not at all do not generally constitute substantial evidence. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

If Dr. Horwitz is considered to be a treating physician, the ALJ should have given a good reason for the weight given to the treating source's medical opinion. 20 C.F.R. § 404.1527(c)(2); s*ee McLevish v. Barnhart*, No. CIV.01-1444 ADM/JGL, 2002 WL 1802247, at *2 (D. Minn. Aug. 5, 2002) (remanding case so that the ALJ could either take treating physician's opinion into account or provide an adequate explanation for not affording his opinion controlling weight); *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016) ("Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for doing so."). Even if Dr. Horwitz is not considered to be a treating physician, an ALJ's task is to resolve the differences between medical evaluations and the objective evidence. *See Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010).

The ALJ does not explain how Dr. Horwitz's observations regarding Plaintiff's ability to interact and relate with others was evaluated in light of other evidence in the record, particularly the evidence from Plaintiff's resource room teacher that directly contradicted Dr. Horwitz's observations of Plaintiff. In her assessments of Plaintiff, Dr.

---

[7] For cases filed on or after March 27, 2017, the ALJ need not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings. Instead, the ALJ is to consider the persuasiveness of those opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c).

Horwitz observed that Plaintiff was appropriately dressed and groomed, did not appear to be anxious, did not engage in disruptive behavior, and presented with low energy. Tr. 435. She noticed that with regard to reciprocal social interaction, Plaintiff was very difficult to engage and had poor eye contact. Plaintiff was limited in combining vocalization, gesture, gaze, and facial expression, and he did not initiate any conversation or social interaction with Dr. Horwitz. Plaintiff mentioned that he had some friends that he may see on weekends, and when asked what he liked about himself, Plaintiff said "basketball." Dr. Horwitz recounted that over the course of her treatment, Plaintiff was apathetic and detached when talking about relationships with family and others. She noted that, in contrast, his junior high teachers indicated that he seemed to be more engaged and personable there. Dr. Horwitz had not spoken with Plaintiff's high school teachers. Tr. 435-36.

Similarly, while the ALJ mentions Plaintiff's treatment at Pathways Behavioral Health, she does not include an analysis of those records in her determination of Plaintiff's ability to relate and interact with others. Plaintiff treated with Arain Fareem, M.D., on ten occasions for management of his treatment of ADD with Focalin. On February 11, 2013, David Duncan, LPC, MA, performed a psychological assessment on Plaintiff. Mr. Duncan noted that Plaintiff has problems following through on team sports, but reported that Plaintiff claimed he had "lots of friends." Tr. 472. Mr. Duncan reported that Plaintiff picked on his younger siblings, making them angry, and noted that Plaintiff's IEP was created for reading problems, rather than behavior problems.

The Court is cognizant that "an ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998). However, remand is necessary here so that the ALJ can more fully evaluate Dr. Horwitz's assessments, particularly the assessment performed on January 11, 2013, and the medical records from Pathways in her determination of Plaintiff's ability to relate and interact with others.

Plaintiff also disputes the ALJ's determination that Plaintiff's mother's testimony was not credible. In a child's SSI case, the ALJ must make a specific finding concerning the credibility of a parent's testimony, just as he would if the child were testifying for himself. *See* 20 C.F.R. § 416.926a(d). In her decision, the ALJ found that Plaintiff's mother's statements concerning the intensity, persistence, and limiting effects of Plaintiff's impairments were not credible in light of the medical records, various testing administered, and the observations of Plaintiff's teachers. The ALJ specifically cited Plaintiff's mother's testimony that Plaintiff had problems with eye contact, which was refuted in the Pathways records. Tr. 18. However, the ALJ did not mention evidence that supported Plaintiff's mother's credibility, including Dr. Horwitz's assessment, which specifically documented Plaintiff's eye contact as "very poor." Tr. 435.

Generally, assessing and resolving credibility is a matter properly within the purview of the ALJ. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). However, in light of the Court's order remanding this matter for further evaluation of Dr. Horwitz's opinion and the Pathways records, the ALJ is instructed to also re-evaluate the credibility

14

of Plaintiff's mother's testimony, in light of the record as a whole.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED and the case is REMANDED** for further consideration by the ALJ.

A separate Judgment shall accompany this Memorandum and Order.

						_____
						AUDREY G. FLEISSIG
						UNITED STATES DISTRICT JUDGE

Dated this 22nd day of September, 2017.